**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

FRANKENMUTH INSURANCE
COMPANY, a Foreign corporation,

      Case No.:  1:26-cv-228

    Plaintiff,

    vs.

H5K COMPANY, LLC, a limited liability
company, RYAN HESS, an individual, and
AMBER HESS,
an individual,

    Defendants.

_____

## COMPLAINT

Plaintiff, Frankenmuth Mutual Insurance Company ("Frankenmuth"), through counsel, sues Defendants, H5K Company, LLC ("H5K"), Ryan Hess, and Amber Hess (collectively the "Indemnitors").

## PARTIES, JURISDICTION, AND VENUE

1.      Frankenmuth is a corporation incorporated in Michigan with its headquarters in Michigan. Its principal place of business is in Frankenmuth, Michigan. Thus, in accordance with 28 U.S.C. § 1332(c)(1), Frankenmuth is a citizen of Michigan. Frankenmuth is licensed to conduct business in Florida.

2.      H5K is an Alabama Limited Liability Company with its principal place of business in Gulf Shores, Baldwin County, Alabama. Thus, in accordance with 28 U.S.C. § 1332(c)(1), H5K is a citizen of Alabama.

3. Upon information and belief, Ryan Hessis a resident of, and domiciled in, Baldwin County, Alabama. Ryan Hess' last known address is in Baldwin County, Alabama. Thus, Ryan Hess is a citizen of Alabama in accordance with 28 U.S.C. § 1332(a).

4. Upon information and belief, Amber Hess is a resident of, and domiciled in, Baldwin County, Alabama. Amber Hess' last known address is in Baldwin County, Alabama. Thus, Amber Hess is a citizen of Alabama in accordance with 28 U.S.C. § 1332(a).

5. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and because complete diversity exists between Frankenmuth Mutual and the Defendants as citizens of different states.

6. Venue is proper in this Court because the defendants reside in the Southern District of Alabama.

## GENERAL ALLEGATIONS

7. As part of its business, Frankenmuth issues construction bonds and stands as surety for selected contractors.

8. H5K was, at all material times to this action, a contractor who, among other things, performed commercial construction work.

9. In connection with its work, H5K from time to time required surety construction bonds for construction projects.

## THE INDEMNITY AGREEMENT

10. To confirm and secure their multiple obligations to Frankenmuth in exchange

for Frankenmuth's issuance of bonds, the Indemnitors entered into an indemnity agreement with Frankenmuth.

11.     Specifically, on January 27, 2022, the Indemnitors each executed an Indemnity Agreement ("Indemnity Agreement") in favor of Frankenmuth. A true and correct copy of the Indemnity Agreement is attached and incorporated into this Complaint as **Exhibit "A."**

12.     The Indemnity Agreement is just, reasonable, and supported by adequate consideration.

13.     Under the Indemnity Agreement, the Indemnitors agreed to the following, among other things:

> **3.  Indemnification and Hold Harmless:** Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss;

[Indemnity Agreement, ¶ 3].

14.     The Indemnity Agreement defines a "Loss" as:

> All loss, costs and expense of any kind or nature, including attorneys' and other fees or costs, which [Frankenmuth] incurs in connection with any Bond, Contract or this Agreement, including but not limited to all loss, cost and expense incurred by reason of: (a) the underwriting or issuance of any Bond, (b) making any investigation in connection with any Bond; (c) any claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement, (d) any Indemnitor failing to timely and completely perform under or comply with this Agreement, (e) [Frankenmuth] enforcing this Agreement (f) [Frankenmuth] prosecuting or defending any action in connection with any Bond; (g) obtaining the release of any Bond; (h) [Frankenmuth] recovering or attempting to recover Property in

3

connection with any Bond or this Agreement (i) [Frankenmuth] enforcing by litigation or otherwise any of the provisions of this Agreement, (j) any act of Company to protect or procure any of [Frankenmuth]'s rights, protect or preserve any of [Frankenmuth]'s interests, or to avoid or lessen [Frankenmuth]'s liability or alleged liability, and (k) all interest accruing on any such amounts at the maximum legal rate.

[Indemnity Agreement, p. 2].

15.    The Indemnitors also agreed that:

**5. Collateral Security:** Indemnitors agree to deposit with Company, upon demand, funds, other collateral security acceptable to [Frankenmuth] , in an amount as determined by [Frankenmuth] sufficient to discharge any Loss or anticipated Loss;

[Indemnity Agreement, ¶ 5].

16.    The terms of the Indemnity Agreement are sufficiently clear, definite, and certain to allow this Court to enforce them.

17.    The Indemnity Agreement is unequivocal and specific in setting forth the Indemnitors' obligations to indemnify Frankenmuth from and against any and all loss as a result of executing the construction bonds or because of the Indemnitors' failure to comply with the Indemnity Agreement.

18.    Frankenmuth agreed to issue payment and performance bonds naming one or more of the Indemnitors as principal at the Indemnitors' request in consideration for their promise to comply with the terms of the Indemnity Agreement.

4

## THE PROJECT AND BONDS

19.    On or around February 3, 2022, H5K contracted with EBM Group, LLC, d/b/a EBM Atlantic Group ("EBM") to perform work on the project referred to as The Blake at LPGA (the "Project").

20.    Specifically, H5K and EMB entered into two subcontract agreements, Subcontract #040, relating to drywall and painting, and Subcontract #041, relating to stucco (collectively, the "Subcontracts").

21.    At the request of one or more of the Indemnitors, Frankenmuth issued two performance and payment bonds: Bond No. SUR005729, in a penal sum of $800,000.00, for Subcontract #040, and Bond No. SUR0005730, in a penal sum of $443,000.00, for Subcontract #041 (collectively, the "Bonds"). Both Bonds named H5K as principal and EBM as obligee.

22.    Frankenmuth received claims against the Bonds ("Claims") from EBM due to H5K's failure or refusal to fulfill its performance obligations under the Subcontracts.

23.    Specifically, by letter dated January 20, 2023, (the "Default Letter"), EBM notified Frankenmuth that it was declaring H5K in subcontractor default and terminating the Subcontracts. A true and correct copy of the Default Letter is attached and incorporated into this Complaint  as **Exhibit "B."**

24.    On April 5, 2023 EBM initiated a lawsuit against H5K and Frankenmuth to recover damages it claims to have suffered as a result of H5K's allegedly incomplete work and improperly and/or defective work on the Project (the "Litigation").

25.    On April 3, 2025, Frankenmuth sent the Indemnitors a Demand for Collateral

Security, requesting they comply with their indemnity obligations under the Indemnity Agreement, including, but not limited to, holding Frankenmuth harmless, indemnifying it for losses, fees, costs, and expense sustained or incurred by reason of Frankenmuth having issued the Bonds, and depositing collateral with Frankenmuth to protect it against loss. The Indemnitors failed to post collateral in accordance with their obligations under the Indemnity Agreement. A true and correct copy of Frankenmuth's April 3, 2025 Demand for Collateral Security is attached and incorporated into this Complaint as **Exhibit "C."**

26.    Frankenmuth continued requesting collateral to protect itself from any potential loss; however, the Indemnitors failed to post any collateral and failed to otherwise comply with their indemnity obligations under the Indemnity Agreement.

27.    On February 18, 2026, Frankenmuth sent the Indemnitors a final Demand for Reimbursement, demanding reimbursement for the costs incurred in investigating, defending, and resolving Claims on the Bonds. A true and correct copy of Frankenmuth's February 18, 2026, Demand for Reimbursement is attached and incorporated into this Complaint as **Exhibit "D."**

28.    Frankenmuth ultimately executed a settlement agreement with EBM dated April 9, 2026, by which Frankenmuth paid EMB $450,000.00 to settle all claims that were asserted or could have been asserted against Frankenmuth in the Litigation.

29.    Frankenmuth has incurred losses in connection with the issuance of the Bonds, including, among other things, investigating and resolving the Claims and the Litigation, as well as costs and fees of consultants and attorneys retained for those purposes. As of May 31, 2026, Frankenmuth's losses investigating, resolving, defending

6

against, and managing the Claims total $72,047.95. These losses are continuing in nature.

30.     To date, the Indemnitors have refused or are unable to comply with their obligations under the Indemnity Agreement to indemnify, hold harmless, and/or reimburse Frankenmuth for the losses it has incurred, and continues to incur, as a result of issuing the Bonds.

31.     Frankenmuth has retained the undersigned attorneys to represent it in this action and is obligated to pay its attorneys a reasonable fee for their services.

32.     All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
## CONTRACTUAL INDEMNITY

33.     Frankenmuth realleges and incorporates paragraphs 1 through 32 as if fully set forth herein.

34.     This is an action for damages for the Indemnitors' breach of the Indemnity Agreement.

35.     The Indemnitors are in default of, and have breached, the Indemnity Agreement by:

> a. failing to comply with their collateral security obligations and deposit with Frankenmuth funds sufficient to discharge any loss or anticipated loss;
>
> b. failing to indemnify Frankenmuth from and against all loss; and

c.  failing to perform and comply with the terms, covenants, and obligations of the Indemnity Agreement.

36.  Frankenmuth fully performed all of its obligations under the Indemnity Agreement.

37.  As a result of the Indemnitors' breaches and defaults of the Indemnity Agreement, Frankenmuth suffered damages in at least the amount of $522,047.95 as a result of issuing the Bonds, including, but not limited to, fees and costs incurred in investigating, resolving, and managing the Claims. These losses are continuing in nature.

38.  Frankenmuth's damages are continuing in nature because it expects to incur additional losses as a result of issuing the Bonds, which losses will include payment of additional claims and the costs to investigate and defend itself against those claims.

39.  Despite demand, the Indemnitors have failed to indemnify or reimburse Frankenmuth for the damages it has incurred.

40.  Frankenmuth is entitled to an award of its attorneys' fees and costs in pursuing this claim pursuant to the Indemnity Agreement.

WHEREFORE, Frankenmuth demands judgment against the Indemnitors, jointly and severally, for damages, prejudgment interest, attorneys' fees, costs, and expenses, and such further relief as this Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT

41.  Frankenmuth realleges and incorporates paragraphs 1 through 40 as if fully set forth herein.

8

42.    The Indemnity Agreement executed by Indemnitors in favor of Frankenmuth is a valid and binding contract.

43.    As set forth above, Paragraph 3 of the Indemnity Agreement states:

**3. Indemnification and Hold Harmless:** Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss;

44.    The Indemnity Agreement defines a "Loss" as:

All loss, costs and expense of any kind or nature, including attorneys' and other fees or costs, which [Frankenmuth] incurs in connection with any Bond, Contract or this Agreement, including but not limited to all loss, cost and expense incurred by reason of: (a) the underwriting or issuance of any Bond, (b) making any investigation in connection with any Bond; (c) any claim, which means any notice, claim, demand, defense, counterclaim, setoff, lawsuit or proceeding or circumstance which may constitute, lead to or result in Loss, liability, or asserted liability in connection with any Bond or this Agreement, (d) any Indemnitor failing to timely and completely perform under or comply with this Agreement, (e) [Frankenmuth] enforcing this Agreement (f) [Frankenmuth] prosecuting or defending any action in connection with any Bond; (g) obtaining the release of any Bond; (h) [Frankenmuth] recovering or attempting to recover Property in connection with any Bond or this Agreement (i) [Frankenmuth] enforcing by litigation or otherwise any of the provisions of this Agreement, (j) any act of Company to protect or procure any of [Frankenmuth]'s rights, protect or preserve any of [Frankenmuth]'s interests, or to avoid or lessen [Frankenmuth]'s liability or alleged liability, and (k) all interest accruing on any such amounts at the maximum legal rate.

45.    The Indemnitors have failed to exonerate, indemnify and hold harmless Frankenmuth from and against the Loss it incurred by reason of having executed the Bonds.

46.    The failure of the Indemnitors to indemnify Frankenmuth constitutes a breach of the Indemnity Agreement and a Default under the Indemnity Agreement.

9

47. Accordingly, Frankenmuth is entitled to assert a claim for breach of contract against Indemnitors.

48. As of May 31, 2026, Frankenmuth has been damaged in the amount of $522,047.95 due to the Indemnitors' breach of contract.

## COUNT III
## SPECIFIC PERFORMANCE

49. Frankenmuth realleges and incorporates paragraphs 1 through 48 as if fully set forth herein.

50. Frankenmuth has incurred various losses, including those in connection with paying to resolve and investigate Claims on the Bonds.

51. Frankenmuth has incurred losses in the form of attorneys' and consulting fees, costs, and expenses associated with investigating potential exposure.

52. Frankenmuth has suffered, and will continue to suffer, various kinds of liability as a result of having executed the Bonds, due to the Indemnitors' failure to honor their obligations under the Indemnity Agreement, and Frankenmuth's efforts to enforce the Indemnity Agreement's covenants and conditions.

53. The Indemnitors have been unwilling and/or unable to adequately collateralize Frankenmuth, as the Indemnity Agreement requires.

54. The Indemnity Agreement provides, in part, that

> Indemnitors agree to deposit with Company, upon demand, funds, other collateral security acceptable to Company, in an amount as determined by the Company sufficient to discharge any Loss or anticipated Loss…Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or be held by

Company as collateral security against any Loss or unpaid premium on any Bond.

55. Before filing this action, Frankenmuth demanded that the Indemnitors post sufficient collateral security to protect Frankenmuth from losses and exposure to potential losses.

56. Despite Frankenmuth's demands, the Indemnitors have failed and/or refused to provide sufficient collateral to Frankenmuth.

57. If the requested relief is not granted, the Indemnitors may sell, transfer, dispose, lien, secure, or otherwise divert assets, thereby preventing Frankenmuth's access to these assets for discharging the obligations of the Indemnitors to exonerate and indemnify Frankenmuth.

58. Frankenmuth's fear of further loss is reasonable based on the allegations in this Complaint.

59. Frankenmuth has no adequate remedy at law to enforce its rights and it will be irreparably harmed if the Indemnitors are not required to post collateral with Frankenmuth. This is the case even if the Indemnitors were not candidates to transfer asserts, insofar as Frankenmuth would still have to wait until a judgment in this case, which could take considerable time to obtain, in order to safeguard assets from which Frankenmuth could collect. Part of what Frankenmuth bargained for in committing to act as surety for H5K was the commitment that it would be entitled to immediate collateral in a situation such as the one that presents itself here and caused Frankenmuth to file suit.

11

60.     The Indemnity Agreement is just and reasonable and supported by adequate consideration.

61.     The terms of the Indemnity Agreement are sufficiently clear, definite, and certain to allow enforcement by this Court.

62.     The performance Frankenmuth seeks is substantially identical to that promised in the Indemnity Agreement.

## COUNT IV
## COMMON LAW INDEMNITY

63.     Frankenmuth realleges and incorporates paragraphs 1 through 62 as if fully set forth herein.

64.     Frankenmuth asserts its rights to be indemnified by Indemnitors pursuant to the doctrine of common law indemnity and statutory indemnity under § 8-3-5 of the Alabama Code, which provides: "Payment by a surety or endorser of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of the principal."

65.     "The basis for indemnity is restitution, and the concept that one person is unjustly enriched at the expense of another when the other discharges liability that it should be his responsibility to pay." *Amerada Hess Corp. v. Owens-Corning Fiberglass Corp.,* 627 So. 2d 367, 370 (Ala. 1993) (quoting Restatement (Second) of Torts § 886B (1997)).

66.     "The unexpressed premise has been that indemnity should be granted in any factual situation in which, as between the parties themselves, it is just and fair that the indemnitor should bear the total responsibility, rather than to leave it on the indemnitee . .

12

. .” *Amerada Hess*, 627 So. 2d at 370 (quoting Restatement (Second) of Torts § 886B (1997)).

67.     Frankenmuth has incurred losses and expenses, including, but not limited to, claims, attorneys' fees and court costs, in connection with its issuance of the Bonds for which the Indemnitors are liable and enforcement of the Indemnity Agreement, which are losses and expenses that, in all fairness, Indemnitors should pay.

68.     As stated above, Frankenmuth has incurred losses totaling at least $522,047.95.

69.     Therefore, Frankenmuth pleads a claim of common law indemnity and avers it is entitled to recover from Indemnitors the full amount of its Loss.

WHEREFORE, after due proceedings are held, Frankenmuth demands relief against the Indemnitors as follows:

a.     For entry of judgment against the Indemnitors, jointly and severally, for indemnity in the amount of, at least, $522,047.95 incurred by Frankenmuth as a result of having issued the Bonds and in enforcing the Indemnity Agreement;

b.     For entry of judgment compelling the Indemnitors to specifically perform their obligation by indemnifying Frankenmuth in the amount of, at least, $522,047.95;

c.     For entry of judgment against the Indemnitors for all Frankenmuth's attorney's fees, expert fees, and costs incurred in bringing the captioned action and interest at the maximum rate allowed by law; and

d.    For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause.

## WAIVER OF JURY TRIAL

As set forth in the Indemnity Agreement, the Indemnitors waived any right they might otherwise have had to a trial by jury as to the claims in this Complaint.

DATED: June 22, 2026

Respectfully submitted,

*/s/ Brandon M. Lawson*
Brandon M. Lawson
ADAMS AND REESE, LLP
11 N. Water Street, Suite 23200
Mobile, Alabama 36633
(251) 650-0896
brandon.lawson@arlaw.com

Alec M. Taylor
ADAMS AND REESE LLP
1018 Highland Colony Pkwy, Suite 800
Ridgeland, Mississippi 39157
(601) 292.0706
alec.taylor@arlaw.com

*Attorneys for Frankenmuth Insurance Company*

14

**TO BE SERVED VIA PRIVATE PROCESS SERVER ON THE FOLLOWING:**

H5K COMPANY, LLC
3906 Stafford Blvd.
Gulf Shores, AL 36542

RYAN HESS
3906 Stafford Blvd.
Gulf Shores, AL 36542

AMBER HESS
3906 Stafford Blvd.
Gulf Shores, AL 36542